■ In the Matter of CHESTNUT TREE OF ITHACA, INC., Doing Business as THE DUGOUT TAVERN, Petitioner, v THOMAS A. DUFFY, JR., et al., Individually and as Members of the State Liquor Authority, Respondents.—Mikoll, J. ■

Petitioner had been licensed for the on-premises sale of alcoholic beverages at premises described as "a college bar" in the City of Ithaca, Tompkins County, since 1976. In August 1984 petitioner was charged with six violations of the Alcoholic Beverage Control Law. In September 1985 petitioner was charged with additional violations of the same law. The notice of pleading for this second set of charges was amended in October 1985. Three of the six violations petitioner was originally charged with relate to an event which occurred on the licensed premises on March 2, 1984 when a patron named William Rivers was served an alcoholic beverage even though he was already intoxicated. He was later forcibly ejected from the premises and sustained injuries which resulted in his death. Rivers was ejected from the premises by Arthur Graham, who was an off-duty employee of petitioner.

Separate proceedings were held for each set of charges. The Administrative Law Judge (hereinafter ALJ) who heard the first proceeding suffered a stroke and was unable to hear the second proceeding. The ALJ who heard the second proceeding prepared a report of his findings for both proceedings. In his findings, the ALJ sustained the charges relating to the occurrence of March 2, 1984, namely that the licensee had permitted or suffered the licensed premises to become disorderly, that Graham's conduct during the event warranted cancellation, revocation or suspension of the license, and that Rivers had been served an alcoholic beverage while he was already intoxicated. The ALJ also sustained some of the other charges concerning the sale of alcoholic beverages to minors and the keeping of containers with contents other than those described on their labels. Upon review of the entire record, the State Liquor Authority adopted the ALJ's findings. It then revoked petitioner's license and imposed a $1,000 bond claim. Petitioner then commenced this CPLR article 78 proceeding to review the Authority's determination. The proceeding was transferred to this court.

The Authority's determination should be modified by annulling so much thereof as sustained charge No. 4 in proceeding No. 1 regarding a sale to an inebriated person; the penalty imposed must be vacated and the matter remitted to the Authority for reconsideration of the penalty in light of the annulment of charge No. 4. The Authority's determination is

supported by substantial evidence as to each of the remaining charges found to have been violated *(see, People ex rel. Vega v Smith,* 66 NY2d 130, 139). It was up to the Authority to pass on the credibility of the witnesses *(see, Matter of Cumberland Farms Food Stores v State Liq. Auth.,* 86 AD2d 742; *see also, Matter of Avon Bar & Grill v O'Connell,* 301 NY 150).

Concerning the charge of selling alcoholic beverages to minors, the sale "must be open, observable and of such nature that its continuance could, by the exercise of reasonable diligence, have been prevented" *(Matter of 4373 Tavern Corp. v New York State Liq. Auth.,* 50 AD2d 855, 856). The record in this proceeding establishes that minors were purchasing alcoholic beverages directly from petitioner's bartenders, that the sales were open and observable, that the minors had been patrons on more than one occasion, and that these sales could have been prevented if the minors had been proofed either at the door or at the bar when they were ordering drinks. That the minors cannot recall who actually served them or what exactly they were drinking "does not preclude a finding of liability for [their] testimony [was] unequivocal as to that which was essential" *(Matter of Lane v State of New York Liq. Auth.,* 127 AD2d 922, 923).

As to the charges relating to disorderly conduct, a licensee is liable for a single incident occurring during his absence if an employee "vested with managerial authority or unequivocal supervisory responsibility" is instrumental in creating the disorder charged *(Matter of De Palo v New York State Liq. Auth.,* 82 AD2d 831, *affd* 54 NY2d 950). It is sufficient that the employee is responsible for the operation of the premises on other than a temporary or casual basis *(see, Matter of Falso v State Liq. Auth.,* 43 NY2d 721, 723; *see also, Awrich Rest. v New York State Liq. Auth.,* 60 NY2d 645).

The ALJ in this case could conclude from the evidence in the record that Mark Euston, who did not testify, had the requisite managerial authority. Thomas Kheel, petitioner's principal, testified on behalf of petitioner that at the time of the sale to the inebriated Rivers, David Servini, an inexperienced bartender, and Euston, a very experienced bartender, were on duty. Kheel said that Servini was down stocking the cooler when he looked up at Rivers, sitting at the bar. Rivers asked for a bottle of Budweiser which Servini served him. Euston came along and observed Rivers, saw that he was completely inebriated and removed the bottle from Rivers, saying, "We're not serving you, you're completely drunk. You were served by mistake." Euston told Rivers that he had to

leave. Rivers said that he was not leaving. Rivers later became involved in a commotion with women patrons. Graham came into the bar, recognized Rivers as a troublemaker and told Euston that Rivers was extraordinarily dangerous, "you got to get him out". Graham said, "Let me see if I can get him out?" After this conversation and apparent approval, Graham proceeded to throw Rivers out the door whereby Rivers received his fatal injury. Euston was observed to be within about five feet of Graham and Rivers as Graham was ushering Rivers toward the door.

Euston overruled the inexperienced bartender and shut off the person he served. Graham did not act to remove Rivers before conferring with Euston and obtaining his permission to try to remove Rivers. It is reasonable to conclude from Euston's acts that Euston was in charge of the operation of the bar and vested with a significant degree of control and managerial authority. One could also conclude that Euston was instrumental in creating the disturbance. Instead of calling the police to assist in removing the dangerous Rivers, Euston elected to have Graham throw Rivers out. The record also supports the conclusion that Graham used excessive force in removing Rivers from the bar.

However, it does not appear that Euston was aware of the service of Rivers by the inexperienced bartender. When he discovered the sale he immediately revoked the sale, removed the bottle of beer and told Rivers to leave. Euston acted promptly to terminate the impropriety. Consequently, the sale to an inebriated person charge should not have been imputed to petitioner. It should therefore be annulled.

We have considered petitioner's other arguments for annulling the Authority's determination and find them to be without merit.

Determination modified, without costs, by annulling so much thereof as found petitioner guilty of charge No. 4 in proceeding No. 1 and imposed a penalty; matter remitted to the State Liquor Authority for reconsideration of the penalty in accordance with this court's decision; and, as so modified, confirmed. Kane, J. P., Mikoll, Yesawich, Jr., Harvey and Mercure, JJ.