■ In the Matter of S & R LAKE LOUNGE, INC., Appellant, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. [618 NYS2d 435] —Proceeding pursuant to CPLR article 78 to review a determination of the respondent New York State Liquor Authority, dated January 6, 1993, which, after a hearing, found the petitioner guilty of the sale of alcoholic beverages to a person under the age of 21 years and suspended the petitioner's liquor license for 15 days and imposed a $1,000 penalty.

Adjudged that the petition is granted, the determination is annulled, on the law, with costs, and the charge is dismissed.

The respondent alleged that on November 4, 1990, the petitioner violated Alcoholic Beverage Control Law § 65 by selling, delivering, or giving away alcoholic beverages to a person under the age of 21 years (see, Alcoholic Beverage Control Law § 65 [1]). The person to whom the petitioner allegedly sold alcohol was killed in a car accident shortly after driving his car from the petitioner's establishment.

After a hearing, the Administrative Law Judge made a summary and statement of his findings, in which he held that the charge had not been sustained by the evidence. On November 24, 1992, this finding was reversed by a respondent, which held that the evidence adduced at the hearing sustained the charge. Subsequently, on January 6, 1993, the respondent issued the order under review which suspended the petitioner's liquor license for 15 days and imposed a $1,000 penalty.

In order to find that the licensee "caused or permitted" the service or delivery of alcoholic beverages to a minor, the conduct must be " 'open, observable and of such nature that its continuance could, by the exercise of reasonable diligence, have been prevented' " (Matter of Austin Lemontree v New York State Liq. Auth., 147 AD2d 476, 477, affd 74 NY2d 869, 870; Matter of Panacea Tavern v New York State Liq. Auth., 144 AD2d 562, 563; Matter of Park II Villa Corp. v New York State Liq. Auth., 141 AD2d 646, 647; 4373 Tavern Corp. v New York State Liq. Auth., 50 AD2d 855, 856).

At the hearing, two friends of the deceased, also under the age of 21 years at the time of the incident, testified that prior to going to the petitioner's establishment, they were all drinking and that they went to another establishment where, without having his identification checked, the deceased was served three beers. The threesome then drove to the licensee's establishment and only the deceased, who already appeared intoxicated, was admitted. The two friends, who remained

outside, later tried to see the deceased whenever the front door opened and, at some point, they saw the deceased drinking from what appeared to be a bottle of beer. The two friends could not see the bar from outside the front door and they did not see how the deceased obtained the beer. When the deceased returned to the car, he was "pretty drunk" and was holding a bottle of beer which he threw out the window before the car accident.

There was no evidence adduced at the hearing to establish that the petitioner knew or should have known the manner in which the deceased obtained the beer (see, Matter of Austin Lemontree v New York State Liq. Auth., 147 AD2d, at 477, supra; Matter of Panacea Tavern v New York State Liq. Auth., 144 AD2d, at 563, supra; Matter of Park II Villa Corp. v New York State Liq. Auth., 141 AD2d, at 647, supra; 4373 Tavern Corp. v New York State Liq. Auth., 50 AD2d, at 856, supra). Accordingly, the determination is not supported by substantial evidence, and must be annulled. Mangano, P. J., Bracken and Santucci, JJ., concur.

Friedmann, J., dissents and votes to confirm the determination, with the following memorandum: The record establishes that S & R Lake Lounge (hereinafter the Lounge) was a topless go-go bar whose entertainment fee was included in the "additional cost of [each customer's] first drink". The Lounge's witnesses testified that its doorman admitted the decedent after he displayed false identification. However, the police officer who subsequently inventoried the decedent's personal effects found a variety of identification documents, but no false ones. Moreover, the decedent's two friends testified that identification was not checked at the door, but that the decedent was admitted while they were excluded based on their respective physical appearances.

It is not disputed that the decedent spent considerable time inside the bar—about an hour. During that period, when his two friends testified that they approached the door to the Lounge and observed the decedent inside drinking from a bottle of beer, the Lounge's witnesses averred that the decedent was not served any alcohol. I find the latter testimony to be incredible on its face, in view of the decedent's conceded admission to the bar as an adult, the length of time he spent inside, and the establishment's clear policy of serving at least one drink to every new customer to cover the costs of the entertainment it provided.

In addition, all of the witnesses agreed that at some point the decedent endeavored to bribe the doorman to admit his

two underage friends. According to the decedent's companions, while negotiating with the doorman, the decedent was visibly drunk and was holding a bottle of Budweiser beer in his hand. The bribery attempt was reported to the bar's manager, who, according to his own testimony, noticed at that point that the decedent was intoxicated and signalled to the barmaid to "cut him off"—that is, to stop serving him alcoholic beverages. No Lounge employee made any effort to eject him.

On these facts, I would conclude that the respondent's determination that the licensee "caused or permitted" the service or delivery of alcoholic beverages to a minor, in violation of Alcoholic Beverage Control Law § 65 (1), was supported by substantial evidence. The standard to be applied is whether the illegal conduct was "open, observable and of such nature that its continuance could, by the exercise of reasonable diligence, have been prevented" *(Matter of Jo Mar Jo Rest. Corp. v New York State Liq. Auth.,* 197 AD2d 625; *Matter of Culligan's Pub v New York State Liq. Auth.,* 170 AD2d 506; *Matter of Al Ronick, Inc. v New York State Liq. Auth.,* 157 AD2d 656; *Matter of Austin Lemontree v New York State Liq. Auth.,* 147 AD2d 476, 477, *affd* 74 NY2d 869; *cf., Matter of 4373 Tavern Corp. v New York State Liq. Auth.,* 50 AD2d 855, 856). Here, according to the credible testimony, the decedent was inside the bar for an hour drinking beer while he was visibly intoxicated, and gave the club's employees reason to question his majority when he unabashedly attempted to bribe the doorman to admit his juvenile companions.

While there is some authority for finding the evidence against a licensee to be less than substantial where "[t]here was no testimony with respect to the manner in which the young man obtained the drink, and he did not testify at the hearing" *(see, e.g., Matter of Panacea Tavern v New York State Liq. Auth.,* 144 AD2d 562, 563; *see also, Matter of Park II Villa Corp. v New York State Liq. Auth.,* 141 AD2d 646, 647), such cases are distinguishable, in that critical witnesses who could have established how the minor obtained the illegal beverage were available but chose not to testify. Here, in contrast, the critical witness was deceased, and his friends, who were never admitted to the Lounge, had no opportunity to observe him purchasing his beer. Under these peculiar circumstances, as in many a criminal conviction, the determination depends perforce upon circumstantial evidence—but it is not for that reason unsound *(cf., Matter of De Stefano v State Liq. Auth.,* 186 AD2d 849; *Matter of Chestnut Tree v*

*Duffy,* 140 AD2d 904, 906; *Matter of Lane v State of N.Y. Liq. Auth.,* 127 AD2d 922, 923, 924; *see also, Matter of Gray v Adduci,* 73 NY2d 741; *Matter of Harry's Chenango Wine & Liq. v State Liq. Auth.,* 158 AD2d 804).

In my view, by concluding that the Lounge had in fact served alcohol to the decedent after admitting him without checking his identification, the respondent properly weighed the conflicting testimony and based its determination on the evidence that it reasonably considered to be credible *(see, Matter of De Stefano v State Liq. Auth., supra; Matter of Saratoga Mexican Corp. v Duffy,* 162 AD2d 790; *Sang Yong Lee v New York State Liq. Auth.,* 176 AD2d 644). Accordingly, I vote to confirm the determination as well as the penalty imposed.